See also, D.C., 11 F.R.D. 48.

**BERNSTEIN**

v.

**N. V. NEDERLANDSCHE–AMERI- KAANSCHE STOOMVAART–MAAT- SCHAPPIJ (CHEMICAL BANK & TRUST CO., Third-Party De- fendant).**

United States District Court
S. D. New York.
July 20, 1953.

Bennet, House & Couts, New York City, for plaintiff.

Burlingham, Hupper & Kennedy, New York City, for third-party plaintiff.

Shearman & Sterling & Wright, New York City, for third-party defendant.

DIMOCK, District Judge.

This is a motion by Chemical Bank & Trust Company, third-party defendant, for an order (1) directing third-party plaintiff Holland-America Line, pursuant to Rule 34, F.R.C.P., 28 U.S.C.A., to produce certain documents and (2) directing that third-party plaintiff submit to examination pursuant to Rule 26 et seq., F.R.C.P., by one Willem Van Der Vorm.

The action is one to recover the value of certain ships and to recover other property, or the value thereof, alleged to have been owned by a German corporation, Red Star Linie G.m.b.H., and to have been acquired by Holland-America, defendant and third-party plaintiff, as a result of duress practiced upon plaintiff individually and breach of trust of one Boeger.

Holland-America, a Dutch corporation, has brought in Chemical Bank & Trust Company as a third party defendant and makes claim against it on the theory that Holland-America got title to the ships through Chemical Bank and that Chemical Bank warranted that title. Assuming the validity of this claim of Holland-America's, Chemical Bank is as deeply concerned with plaintiff's claim as is Holland-America. Chemical Bank has been brought into the litigation by the voluntary act of Holland-America and has all of the rights as against Holland-

America that it would have had if Holland-America had been plaintiff in an action brought in New York against Chemical Bank.

Chemical Bank asks the production of the following:

"1. All correspondence, telegrams, cables (both sent and received) and all minutes, memoranda, internal and otherwise, and other papers and documents of the Holland-America Line, its Board of Directors or any of its committees, or any officer, director, or any other representative, agent or employee of Holland-America Line relating to or pertaining in any way to:

"(a) The purchase, proposed purchase, or the possibility of purchase, by Holland-America Line of the Red Star Line (English Company) during the years 1933–34;

"(b) The purchase, proposed purchase or the possibility of purchase, by Holland-America Line of the Arnold Bernstein Schiffahrtsgesellschaft m.b.h. and/or the Red Star Linie G.m.b.H., the vessels and other properties or assets of either or both of said Lines, or the 'good-will', conference rights or any other interest in either or both of said Lines, between the years 1935 and 1939, both inclusive.

"2. Without in any way limiting the generality of the foregoing, specifically all correspondence, telegrams, cables, memoranda, internal or otherwise and other papers and documents exchanged between Holland-America Line or any of its directors, committees, officers, representatives, agents or employees (on the one hand), and Norddeutsch Kreditbank and Mr. C. Aldag, the firm of Knoehr & Burchard, or any other broker, brokerage firm or person or organization acting in such capacity (on the other) between January 1, 1937 and September 1, 1939, relating or pertaining in any way to:

"(a) the purchase, the proposed purchase or the possibility of purchase, by Holland-America Line of the Arnold Bernstein Schiffahrtsgesellschaft m.b.h.

and/or the Red Star Linie G.m.b.H., the vessels and other properties or assets, or the 'good-will', conference rights or any other interest in either or both of said Lines.

"3. All correspondence, telegrams, cables, memoranda, internal and otherwise, and other papers and documents sent or received by the Holland-America Line or any of its directors, committees, officers, representatives, agents or employees from January 25, 1937 to date, relating or pertaining in any way to:

"(a) Arnold Bernstein;

"(b) The arrest, investigation, imprisonment, indictment, trial, conviction and release of Arnold Bernstein; and the transfer of any of his shares or other interests in the Arnold Bernstein Schiffahrtsgesellschaft m.b.H. and/or the Red Star Linie G.m.b.H. (hereinafter called the 'Bernstein Lines'):

"(c) Marius Boeger;

"(d) Chemical Bank & Trust Company, as related to any of the issues in the action herein;

"(e) Hermann A. Kollmar;

"(f) Erie Railroad, as related to any of the issues in the action herein.

"(g) A. L. Burbank and/or A. L. Burbank & Co., Ltd., as related to any of the issues in the action herein;

"(h) The financial condition of the Bernstein Lines;

"(i) The effort to reorganize the Bernstein Lines;

"(j) The provisional reorganization plan of the Bernstein Lines of December 1, 1937, including the negotiations leading up to it and the operation of the Bernstein Lines thereunder;

"(k) Efforts to find a purchaser for the Bernstein Lines;

"(l) Merger of the Arnold Bernstein Schiffahrtsgesellschaft m.b.H. and the Red Star Linie G.m.b.H. on or about April 7, 1938;

"(m) The Black Diamond arbitration claim; the attachment thereunder; the

liability of the Bernstein Lines resulting from the arbitration and payment of said liability and other matters connected therewith;

"(n) The insolvency of the Bernstein Lines in early 1939;

"(o) The financial and business affairs of the Bernstein Lines.

"4. Complete file of clippings from newspapers, magazines and other publications whether published in the United States or abroad relating in any way to the matters referred to in paragraphs 1 through 3, inclusive above.

"5. Any memoranda, news or press releases, articles or publications of any kind circulated or distributed by the Holland-America Line or any of its agents, relating in any way to the matters, referred to in paragraphs 1 through 3, inclusive, above."

█ The complexity of the facts, the remoteness of Holland-America's home office and the necessity for translations and study in the light of foreign law make out a prima facie case of good cause under Rule 34, F.R.C.P.

Holland-America's objections will now be considered.

Objection 1. Chemical Bank was vouched in to defend the action and was represented by a lawyer at an examination of Holland-America by plaintiff which purported to cover the issues in which Chemical Bank is concerned and where papers from the files of Holland-America were produced.

█ I find that the letter relied on to effect a "vouching in" did not have that result so that Chemical Bank had no standing at that examination to demand the production of any papers. The lawyer referred to acted as an observer only. Nothing about this previous examination of Holland-America militates against Chemical Bank's claim of "good cause".

Objection 2. Holland-America should not be required to bring the papers to New York.

█ This objection is sufficiently answered by the fact that Holland-America chose to implead Chemical Bank in New York.

█ Objection 3. Papers dated after the commencement of the action should not be required to be produced since practically all of them embody communications between attorney and client.

Chemical Bank has not argued that this objection is not well taken and I shall so treat it.

Objection 4. Chemical Bank has delayed making this application.

On September 8, 1949, Chemical Bank served its answer to the third-party complaint. Plaintiff then moved to strike the answer out and that motion was denied on March 14, 1950. Holland-America was then in process of examining plaintiff. This examination was not concluded until June 1952. Until October 15, 1952, there were settlement negotiations. Thereupon, on October 22, 1952, Chemical Bank served a notice for the examination of plaintiff. It was not completed until March 12, 1953. Immediately upon completion of the examination of plaintiff, plaintiff commenced discovery and inspection of Chemical Bank's files and that was not concluded until March 27, 1953. In the meantime Chemical Bank had served notices of taking depositions of five witnesses in Germany and its counsel left New York for that purpose on April 1, 1953.

On March 27, 1953, before leaving the country, counsel for Chemical Bank had written counsel for Holland-America describing the papers discovery and inspection of which is sought on this motion and suggesting that counsel for Holland-America assemble them while in Europe on the trip which would be taken for the purpose of the depositions in Hamburg.

Counsel arrived back in New York on May 5, 1953. Until May 20 they were engaged in the preparation for and the taking of certain depositions noticed by plaintiff while counsel were in Hamburg.

The notice of the present motion was served on June 5, 1953.

■ If the discovery sought was likely to delay trial, Holland-America might have some basis for argument that counsel for Chemical Bank should have taken proceedings for discovery concurrently with the activity above described. In view of the fact that the discovery may be had before the case can be tried, however, I think that the objection based on delay is without substance.

I shall now consider the motion for a direction that Holland-America submit to examination through Mr. Van Der Vorm.

There is no express warrant in the Federal Rules of Civil Procedure for an order directing that a party submit to examination. What Rule 26 does, and what the rules following which are cited in the notice of motion as authority do, is permit examination of parties and witnesses pursuant to notices served by the litigants without sanction of court. For failure of a party to appear, however, court sanctions are provided by Rule 37 (d). Among these sanctions is the striking out of a pleading of the recalcitrant party. Thus, if Holland-America should refuse to appear pursuant to notice, its third-party complaint against Chemical Bank could be stricken out by the court. I take it that what Chemical Bank really asks for in this motion is a declaration that if Holland-America should not produce Mr. Van Der Vorm for examination in New York I would strike out Holland-America's third-party complaint. There is doubtless some justification for proceeding in this fashion in a case such as this where all proceedings have been assigned to me pursuant to General Rule 2 of the rules of this district.

The justification of this branch of the motion depends, however, on my power to strike out Holland-America's pleading if it fails to produce Mr. Van Der Vorm for examination. Rule 37(d), which is the source of the court's power to strike out a pleading, permits that sanction "if a party or an officer or managing agent of a party wilfully fails to appear". Thus it is vital to decide whether Mr. Van Der Vorm would be a party or an officer or managing agent of a party on the one hand or a mere witness on the other. If his capacity would be that of a witness only, I would be powerless to strike out Holland-America's pleading for his failure to attend.

Judge Irving R. Kaufman has held, in Campbell v. General Motors Corp., D.C.S. D.N.Y., 13 F.R.D. 331, that a director of an American corporation, which is a party to litigation, unlike an officer or a managing agent thereof, can be examined only as a witness. I see no escape from his conclusion. Chief Judge Laws has held in Societé Internationale pour Participations Industrielles et Commerciales S. A. v. Clark, D.C.D.C., 8 F.R.D. 565, that directors of a Swiss corporation qualify for this purpose as officers in the American sense. I cannot reach that conclusion about Mr. Van Der Vorm, however.

The evidence submitted to me is that Mr. Van Der Vorm is chairman of the board of directors or commissaris of Holland-America. The only testimony as to the status of the commissaris is that, in Dutch companies, there are "managing directors, who actually are responsible for the whole company and take charge of the whole company and above them is the board of commissaris. * * * This means to say for big expenses and big things which have to be done the board has to give authorization because they take care on account of the shareholders. That is the actual position of the board of commissaris. * * * If you speak about the managing director under the Dutch law and the officers under the American law, the power of the managing director under the Dutch law is bigger than that of the officers under the American law. I mean to say that the power of the board of commissaris is smaller than the power of the board of directors here."

It seems to me clear that, if, as follows from the Campbell case, supra, the answer of an American corporation cannot be stricken out for failure to produce a director for examination, then a fortiori the third-party complaint of Holland-America cannot be stricken out for failure to produce the chairman of its board of commissaris. I therefore deny the motion for a direction that Holland-America produce Mr. Van Der Vorm for examination in New York. If he is to be examined he must be examined as a witness.

None of the objections urged by Holland-America to the examination of Mr. Van Der Vorm has any validity if he is examined abroad as a witness rather than as a party and if the examination is proceeded with promptly.

The motion for production of documents is granted with the qualification that no papers dated after the commencement of this action need be produced and with the following further qualifications:

With respect to minutes of the Commissaris (Board of Directors) and the minutes of the CVT (Executive Committee) and of any other Committee of Holland-America Line, Holland-America Line will produce in New York City photostatic copies of all portions of such minutes as refer to or relate in any way to any of the matters specified in Items 1 through 5; and such photostatic copies shall also contain the date of the meeting to which the minutes relate, the persons present at such meeting and other such formal matters;

With respect to all other documents such as correspondence, telegrams, cables, memoranda and all other papers and documents called for by said Items 1 through 5, Holland-America Line shall produce in New York City the originals or a complete photostatic copy of each;

All such papers and documents whether in the possession of the Holland-America Line, or its officials or attorneys, shall be assembled and produced in New York City on or about August 24, 1953; and

As to any of said papers and documents with respect to which plaintiff may desire to make any claim of privilege, or other objection to its production, the same nevertheless shall be brought to New York City so that it may be available for inspection by the Court when passing upon any such objection by the Holland-America Line.

If an order more formal than this opinion is desired it may be settled on notice.